## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CONNIE J. JOHNSON, | ) | CASE NO. 4:08CV3231 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, as | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Plaintiff Connie J. Johnson's, appeal of a "final decision" by the Commissioner of the Social Security Administration ("Administration") denying, in part, the Plaintiff's applications for disability insurance benefits and supplemental security income payments under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq., 1381 et seq. Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), provide for judicial review of a "final decision" of the Commissioner. The Court has reviewed the record, the parties' briefs, and the applicable law and finds that the decision of the Administrative Law Judge ("ALJ") is not supported by the substantial evidence on the record.

## PROCEDURAL BACKGROUND

The Plaintiff, Connie J. Johnson ("Johnson"), filed a Title II application for a period of disability and disability insurance benefits on October 15, 2003 (Tr. 94-96). Johnson also filed a Title XVI application for supplemental security income on January 11, 2005 (579A-579E). After her applications were denied initially on April 28, 2004, and again upon reconsideration on August 25, 2004, Johnson requested an administrative hearing before an ALJ on October 21, 2004 (Tr. 36-50, 579F-579M). On December 21, 2006, the ALJ

issued a partially favorable decision, finding Johnson "disabled" as defined by the Act, effective November 1, 2005 – but not "disabled" prior thereto (Tr. 18-31). The Appeals Council denied Johnson's request for review on September 11, 2008 (Tr. 7-9). As a result, the ALJ's decision now stands as the Commissioner's final decision (Tr. 7-10, 17, 580).

## FACTUAL BACKGROUND

Johnson is a fifty-nine year old woman with a high school diploma and training in cosmetology (Tr. 146, 149, 683). Johnson has past work experience as a receptionist, general clerk, and a telephone operator (Tr. 160-68). She alleges disability starting November 9, 2001, due to fibromyalgia; chronic fatigue syndrome; arthritis and pain in the spine, back of the neck, and fingers; brain fog; bladder leaks; memory problems; difficulty thinking; and carpal tunnel syndrome (Tr. 94, 140). Johnson also claims that her disability has limited her work, in that she must work slowly, she has unclear thinking, she fatigues quickly, she has very little energy, and she has trouble remembering things (Tr. 140).

A review of the administrative record reveals that prior to the onset date of August 10, 2001, Johnson saw Bruce A. Stayton, M.D., and reported symptoms of being "tired and brain fogged" (Tr. 274). Dr. Stayton's examination found that Johnson was "tender on all trigger points, no enlarged thyroid," and had a "very slow return phase on knee jerk" (Tr. 274). Dr. Stayton then recommended a book, "What Your Doctor May Not Tell You About Fibromyalgia," and told Johnson to perform "light consistent exercise" (Tr. 274).

On May 24, 2002, Johnson again reported symptoms of fatigue to her primary-care physician, David R.. Paulus, M.D., who diagnosed her with fibromyalgia (Tr. 335).

Johnson returned to Dr. Stayton on August 9, 2002, with complaints of an irregular menstruation and questions about her toenails, red legs, and fibromyalgia (Tr. 271). She also complained of her legs swelling by the end of the day and her lower legs turning dark

2

red (Tr. 271).   Dr. Stayton noted that Johnson had typical discoloration of venous insufficiency in both legs, mild but typical fungal changes in her toenails, and mild pretibial edema/ankle edema (Tr. 271).   Dr. Stayton then assessed fibromyalgia, fungus infection of toenails, and chronic venous insufficiency (Tr. 271).   He prescribed a fungal cream and stockings, and recommended that Johnson avoid tight clothing at her waist and legs and elevate her feet whenever possible (Tr. 271-71A).   Johnson's weight stayed around 230 pounds from October 30, 2001, to November 11, 2005, and she has since lost 50 pounds (Tr. 241).

Johnson's daughter, Angela Bornschlegl, completed a Supplemental Information Form on January 14, 2004, in support of Johnson's application for disability benefits (Tr. 175-78). The Supplemental Information Form stated that Johnson has a "fiery neck and back," a hard time concentrating, and is unable to keep up on normal every day tasks (Tr. 175-78).   Johnson's daughter also noted that Johnson prepared some meals, walked one to two times a week with a few weeks' break in between, did limited chores, shopped, and participated in church activities (Tr. 175-78).

On February 23, 2004, Johnson returned to see Dr. Paulus with complaints of chronic back pain and fatigue (Tr. 332).   Dr. Paulus ordered blood work and recommended water aerobics for exercise (Tr. 331).

Johnson obtained a consultative disability examination from Ruilin Wang, M.D., on February 28, 2004 (Tr. 338-42).   At that time, Johnson complained of chronic lower back pain of more than 10 years in duration, and that it had gotten progressively worse.   (Tr. 338).   She reported that she could walk less than one block, stand for less than 10 minutes, and sit for less than 30 minutes (Tr. 338).   Johnson also reported neck pain with

3

radiating pain to both shoulders, triggered by mental and physical stress (Tr. 338).  The consultative physician noted that Johnson had a history of fibromyalgia of more than five years with multiple joint pain (Tr. 338).  Johnson also had carpal tunnel syndrome on her right wrist with a previous surgery 27 years earlier and still had weakness on her right hand, but no numbness or tingling sensation (Tr. 338).  Johnson also complained of chronic fatigue of five years (Tr. 339).  After Dr. Wang's examination, he assessed that  Johnson did not have acute distress (Tr. 339).  Dr. Wang also found Johnson's neck to be supple, no tenderness in the abdomen, no edema, varicose veins, or atrophy (Tr. 340).  Johnson also had normal range of motion in her wrists, hips, knees, and ankles (Tr. 340-41).  No specific trigger points were identified, but the whole shoulder blade showed tenderness on palpation (Tr. 340).  Motor strength was 5/5 bilaterally in both upper and lower extremities (Tr. 341).

On March 9, 2004, Johnson presented to psychologist Daniel L. Ullman, Ph.D., M.S., for another consultative disability examination and administration of the Wechsler Memory Sclae-III (WMS-III)(Tr. 434-46).  Johnson's primary concerns were her chronic fatigue syndrome, fibromyalgia, back problems, arthritis, and constant pain (Tr. 344).  She also complained of "brain fog," noticeable memory problems over the past two to three years, and forgetting conversations (Tr. 345).  The results of Dr. Ullman's examination showed Johnson had a general memory index of 91, which was a percentile of 27, and fell within the average for individuals her age (Tr. 343-44).  Johnson "demonstrated the ability to learn and to retain visual and auditory information on an immediate and delayed basis" (Tr. 344).  She also functioned in the average range for tasks involving working memory and more complex attentional skills (Tr. 344).  From the examination, Dr. Ullman gave

4

Johnson a Global Assessment of Functioning ("GAF") score of 65, and opined that she did not present with a major psychiatric illness[1] (Tr. 345).

State Agency physician J. E. Horley, M.D., reviewed Johnson's record on April 26, 2004, and opined that Johnson could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours in an eight-hour workday, sit six hours in an eight-hour workday, and push and/or pull without limitation (Tr. 352-61).  State Agency physician Arthur Weaver, D.O., affirmed Dr. Horley's determination regarding Johnson's residual functional capacity ("RFC") on August 16, 2004 (Tr. 362-63).

Johnson returned to Dr. Paulus on May 24, 2004, complaining of severe fatigue, stamina difficulties, and problems concentrating (Tr. 336).  Dr. Paulus assessed fatigue and fibromyalgia (Tr. 336).

On June 10, 2004, Johnson again saw Dr. Paulus with complaints of fluctuating pain in her lower back and neck, fluctuating memory and concentration, severe fatigue, and needing extra time to complete tasks (Tr. 334). On examination, Johnson reported having pain with neck movement and muscle tenderness in her shoulders (Tr. 333-34).  Dr. Paulus assessed fibromyalgia, degenerative joint disease, and chronic fatigue (Tr. 333).

On June 16, 2004, Dr. Paulus opined in a letter that Johnson had fibromyalgia, degenerative joint disease of the cervical and the lumbar spine, and chronic neck and back

---

[1] The Global Assessment of Functioning ("GAF") Scale is a rating system for reporting the clinician's judgment of the individual's overall level of functioning. *American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision (DSM-IV-TR) 34 (4th ed. 2000).  A score of 61-70 indicates some "[m]ild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  *Id*. at 34.

pain (Tr. 573).  The letter also stated that the pain was worse when Johnson sat, and some days she could only sit for a few seconds before having to change positions, from sitting to reclining to standing (Tr. 573).  Furthermore, Johnson could not extend her neck due to pain and the fibromyalgia was affecting her memory and concentration (Tr. 573).  Johnson could not handle distractions and had difficulty doing more than one simple task at a time due to difficulty concentrating (Tr. 573).  Finally, he opined that, given the pain, memory and concentration difficulties, fibromyalgia, and degenerative joint disease, Johnson was unable to maintain gainful employment (Tr. 573).

On July 26, 2004, Johnson presented to a state agency physician who reviewed Johnson's medical record, opining that Johnson did not have a medically determinable mental impairment (Tr. 368). This finding was subsequently affirmed by a consulting clinical psychologist, Patricia Newman, Ph.D., on August 24, 2004 (Tr. 366-67).

On October 27, 2004, Johnson saw Kay M. Shilling, M.D., with complaints of trouble sleeping, crying frequently, and feeling moody and irritable (Tr. 579). Dr. Shilling reported that Johnson appeared unkempt, her memory was intact, she had an average IQ, her insight was fair, and she had good judgment (Tr. 579).  Dr. Shilling then prescribed Johnson some medication, and expected to see her again in one week, but Johnson did not return for her appointment (Tr. 578-79).

Johnson returned to Dr. Shilling on December 1, 2004, complaining that the medication's effects were "mind-altering" (Tr. 578).  As a result, Dr. Shilling switched Johnson to Lexapro and scheduled her to come in two weeks later (Tr. 578).  When Johnson came back on December 15, 2004, she told Dr. Shilling that the Lexapro was helping and she "felt like doing things" (Tr. 578).

6

On January 12, 2005, Johnson returned to Dr. Paulus complaining of sore and crusty ears, coughing up blood, and bloody stool (Tr. 571). Dr. Paulus noted that Johnson was alert and not in distress, but did have an inflamed nasal membrane (Tr. 571). Dr. Paulus assessed depression and prescribed Lexapro (Tr. 572). On January 20, 2005, Johnson reported back to Dr. Shilling that the Lexapro was helping her control her emotions (Tr. 577).

On September 1, 2005, Johnson saw Dr. Paulus for her difficulty swallowing and reflux symptoms (Tr. 566). Dr. Paulus found Johnson to be alert, not in distress, and negative in the adenopathy and thyroid (Tr. 566). Dr. Paulus ordered thyroid testing and blood work, which were found to be normal, and gave Johnson a sample of Protonix (Tr. 565, 567).

Johnson's former employer and son-in-law, Garth Barnschlagel (Tr. 689), submitted documentation on May 19, 2006, at the request of the ALJ, showing Johnson earned between $300.00 to $800.00 monthly from May 2005 through April 2006 working an average of 16 hours weekly as a receptionist (Tr. 106-30, 216, 222). Barnschlagel noted that "the quality of her work was usually acceptable, just slow" (Tr. 216). "She did very well with taking phone calls and responding to them accordingly. Although, she did make many mistakes and had to go back and redo them over again" (Tr. 216). Barnschlagel also stated that Johnson would not do what others did in the same amount of time and had directions written down and would have to refer to them every time she did a particular task (Tr. 216). The insurance company that Johnson worked for gave a similar response, in that because Johnson was unable to memorize the extensions for the different offices after three days, she was fired (Tr. 165).

7

On August 30, 2006, Dr. Paulus opined in a letter that, although Johnson seems motivated to work, she was unable to work in any gainful employment given her condition (Tr. 527).  Dr. Paulus stated that her history and physical examination was consistent with severe fibromyalgia and chronic fatigue syndrome (Tr. 527).  Johnson had "multiple inducible trigger points," a "history of poorly restorative sleep," "significant fatigue and poor stamina," and "chronic muscular pain, particularly in the neck and back area" (Tr. 527).  Dr. Paulus also opined that Johnson could only stand for 10 to 15 minutes and only sit for 30 to 45 minutes (Tr. 527).  Paulus also noted that Johnson had significant depression, memory difficulties, lack of concentration, and poor reading comprehension (Tr. 527).

On November 20, 2006, Johnson completed interrogatory responses to the ALJ's questions about her past and present mental and physical state, daily activities, and employment activity (Tr. 236).  Johnson listed pain, fatigue, and "brain fog" as the main reasons why she could not work prior to November 2005 (Tr. 236).

## ADMINISTRATIVE HEARING

On November 21, 2006, Johnson appeared for an administrative hearing (Tr. 670-712).  She testified that her condition had worsened in February 2006, after she was hospitalized for Crohn's disease (Tr. 692).  When asked about why her job at the blood bank ended, Johnson responded that she was not "fast enough" and "couldn't make the phone calls" (Tr. 694).  Johnson stated that she did not believe that she could accomplish what they wanted her to accomplish at Window Pros because there were reports that she had trouble understanding and remembering what she had read (Tr. 696).  Johnson testified that she could not walk two blocks, had trouble sitting, and "had to stand and move" often (Tr. 698-99).  Johnson also testified that she did not do her own cooking,

8

cleaning, or housework, but could dust or clean a sink occasionally (Tr. 699-700).  On a scale from one to ten, ten being the worst, Johnson said her pain was a seven and had gotten worse over the years (Tr. 700-01).  Johnson also testified that she could not wear professional attire, specifically dress shoes, because of the pain it caused (Tr. 703).

The ALJ then asked the vocational expert ("VE") to consider a hypothetical claimant of Johnson's age, education, and work experience, who could occasionally lift or carry 20 pounds, could frequently lift or carry 10 pounds, could stand, walk, or sit six hours each in an eight-hour workday, had no limitation in use of hands or feet, and could occasionally climb, balance, stoop, kneel, crouch, craw, but could not work on ladders, ropes, scaffolds, or with dangerous equipment (Tr. 704, 707). The VE testified that such an individual, given the ALJ's hypothetical, could perform the work according to the Dictionary of Occupational Titles ("DOT") of a receptionist (DOT code 237.367-038)(7,000 Nebraska jobs; 1,000,000 National jobs), a general clerk (DOT code 209.562-010)(6,500 Nebraska jobs; 1,000,000 National jobs), and a telephone solicitor (DOT code 299.357-014)(6,000 Nebraska jobs; 270,000 National jobs) (Tr. 707).  The VE also testified in reference to Dr. Paulus' August 30, 2006, letter, that if Johnson could only stand for 10 to 15 minutes at a time, and sit 30 to 45 minutes before she needed to lie down, then she would not be able to do her past work as it is typically performed in the national economy (Tr. 709).  Lastly, the VE testified that if Johnson's testimony was considered to be credible, then she would not be able to do any of her past work, or any other type of work, due to her condition (Tr. 709).

## THE ALJ'S FINDINGS

On December 21, 2006, the ALJ issued her decision (Tr. 18-31).  The ALJ found that Johnson had not engaged in substantial gainful activity since November 9, 2001, the

9

alleged onset date (Tr. 24).  In reviewing the record, the ALJ concluded that Johnson had

the following impairments: "degenerative joint disease and mild spondylolisthesis at L4, a

history of carpal tunnel syndrome and releases, status post colon perforation, repair, and

recovery; status post bowel infection, and Crohn's disease" (Tr. 24-25).  She did not

conclude, however, that Johnson had an impairment or combination of impairments that

met or equaled one of the listed impairments in 20 C.F.R. Part 404. Subpart P, Appendix

1 (Tr. 25).  The ALJ found that, prior to November 1, 2005, Johnson was capable of

performing past relevant work as a receptionist, general clerk, and telephone operator

based on her RFC and the VE's testimony that those jobs did not require "more than

occasional stooping, crawling, kneeling, or any climbing of letters or ropes" (Tr. 29).

Consequently, the ALJ found that Johnson was not disabled prior to November 1, 2005 (Tr.

30).

## STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, a district court does not re-weigh

evidence or the credibility of witnesses or revisit issues *de novo*.  *Bates v. Chater*, 54 F.3d

529, 532 (8th Cir. 1995) ("As we have stated many times, we do not reweigh the evidence

presented to the ALJ."); *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995) (holding that

the district court does not "reweigh the evidence or try the issues de novo.").  Rather, the

district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial

evidence in the record as a whole supports the Commissioner's decision. *Id.*

"Substantial evidence is less than a preponderance, but enough that a reasonable

mind might accept it as adequate to support a decision." *Juszczyk v. Astrue*,  542 F.3d 626,

631 (8th Cir. 2008) (quoting *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  The Court

10

must consider evidence that both detracts from, as well as supports, the Commissioner's decision. *Finch*, 547 F.3d at 935.   As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *Id.* ("If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits.") (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir.1996)).

The SSA has promulgated a sequential process to determine whether a claimant qualifies for disability benefits.  *See* 20 C.F.R. § 404.1520(a) (1998); *Cox v. Apfel,* 160 F.3d 1203, 1206 (8th Cir. 1998).   Under the Commissioner's regulations, the determination involves a step-by-step analysis of the claimant's current work activity, the severity of the claimant's impairments, the claimant's RFC and his or her age, education and work experience. 20 C.F.R. § 404.1520(a); *Flanery v. Chater,* 112 F.3d 346, 349 (8th Cir. 1997). The Commissioner determines:   (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *Cox*, 160 F.3d at 1206.  "When determining whether a claimant can engage in substantial employment, an ALJ must

consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001).

At step three of the sequential evaluation, if the claimant is found to suffer from an impairment that is listed in the Appendix to 20 C.F.R. Part 404, Subpart P ("the listings") or is equal to such a listed impairment, the claimant will be determined disabled without consideration of age, education, or work experience. *Flanery,* 112 F.3d at 349. The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. §§ 404.1525(a), 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Thus, in reviewing the ALJ's determinations at each step in his sequential evaluation of Johnson's application, the Court will uphold the Commissioner's final decision "if it is supported by substantial evidence on the record as a whole." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## LAW & ANALYSIS

In Johnson's appeal of the ALJ's decision, she argues that the ALJ committed reversible error when she failed to afford substantial weight to the medical opinions of her treating physician, Dr. Paulus. Additionally, Johnson contends that the ALJ's determination that her subjective statements of pain were not credible is not supported by the substantial evidence in the record. For reasons discussed in greater detail below, the Court concludes that the ALJ's decision to disregard the medical opinions of Johnson's treating physician, Dr. Paulus, and her decision to discredit Johnson's subjective statements, are not supported by substantial evidence in the record. Consequently, the court reverses and remands the final decision of the Commissioner for further proceedings consistent with the Court's findings in this memorandum and order.

12

**1.     The Medical Opinions of Johnson's Treating Physician, Dr. Paulus**

Upon review of the record, the Court finds that the ALJ's failure to afford substantial weight to the medical opinions of Johnson's treating physician, Dr. Paulus, constitutes reversible error.  This is because "[t]he opinion of a treating physician is accorded special deference under the social security regulations." *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).  "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir.2000).  "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the opinion should be given controlling weight." *Krogmeier v. Barnhart,* 294 F.3d 1019, 1023 (8th Cir. 2002).

In the present case, Dr. Paulus's opinions are well-supported by the medical evidence in the record and the ALJ failed to demonstrate that the medical opinions were inconsistent with the substantial evidence in the record as a whole.  Furthermore, "whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations also provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Singh*, 222 F.3d at 452 (citing 20 C.F.R. § 404.1527(d)(2)).  In dismissing Dr. Paulus's medical opinions, the ALJ failed to give a "good" reason for doing so.

The ALJ specifically dismissed Dr. Paulus's medical opinion that Johnson has fibromyalgia[2] (Tr. 25, 27, 28).  In dismissing this medical-opinion evidence from Johnson's

---

[2]Johnson also argues that the ALJ failed to consider or properly evaluate Johnson's alleged memory impairments.  Given that Johnson did have normal memory and attention scores for an individual her age and the ALJ reached her findings based on testimony from

treating physician, the ALJ reasoned that Dr. Paulus's medical opinion was not entirely reliable because "there was no verifications of trigger points that are typically consistent with fibromyalgia syndrome" (Tr. 25).  More specifically, the ALJ addressed Johnson's August 2002 visit to Dr. Paulus, where the "objective tests documented an abnormal visual contrast test," but there were no "specific trigger points identified as consistent with the diagnosis of fibromyalgia" (Tr. 27).  The ALJ also referred to the instance when Dr. Paulus "found no specific findings regarding fibromyalgia, but apparently, was willing to report her symptoms uncritically. . . without an independent examination" (Tr. 28).

The ALJ's characterization of the medical evidence as lacking objective foundation for support of a diagnosis of fibromyalgia is not supported by the substantial evidence in the record as a whole.  In contrast to the ALJ's conclusion, the record contains numerous examples of objective findings that substantiate Dr. Paulus's medical assessment of Johnson's fibromyalgia.  For instance, on August 10, 2001, Johnson went to see Dr. Stayton with complaints of being "tired and brain fogged" and upon  examination, Dr. Stayton assessed Johnson was "tender on all trigger points, no enlarged thyroid," and had a "very slow return phase on knee jerk" (Tr. 274).  On May 24, 2002, Johnson again claimed symptoms of fatigue to her primary-care physician Dr. Paulus, who diagnosed her with fibromyalgia.  On August 9, 2002, Johnson saw Dr. Stayton with complaints of irregular menstruation and was again assessed to have fibromyalgia (Tr. 271).  On May

---

the VE involving a hypothetical of the claimant's age, among other things, the Court finds that the ALJ's finding that Johnson did not have any mental impairments is supported by the substantial evidence in the record.  Johnson also contends that the ALJ erred when she failed to consider Johnson's obesity.  The ALJ, however, was not required to consider Johnson's obesity "because [the Plaintiff] did not allege obesity as a basis for disability in her applications or at the hearing." *Mousseau v. Barnhart*, 119 Fed.Appx. 18, 20 (8th Cir. 2004); (Tr. 94, 140).

24, 2004, Johnson returned to Dr. Paulus with complaints of severe fatigue, stamina difficulties, and problems concentrating, and was again assessed with fibromyalgia (Tr. 335-36).  On June 10, 2004, Johnson saw Dr. Paulus with complaints of fluctuating pain in her lower back and neck, fluctuating memory and concentration, severe fatigue, and needing extra time to complete tasks (Tr. 334).  After examination, Dr. Paulus assessed fibromyalgia (Tr. 333).  On June 16, 2004, Dr. Paulus opined in a letter that Johnson had fibromyalgia that was affecting her memory and concentration (Tr. 573).   On August 30, 2006, Dr. Paulus opined in another letter that Johnson's history and physical examinations were consistent with severe fibromyalgia and that she had "multiple inducible trigger points" (Tr. 527).

All the aforementioned constitutes substantial evidence in the record that corroborates Dr. Paulus' medical assessment of Johnson's condition.   The ALJ's conclusion that no objective medical evidence supports Dr. Paulus's medical assessment of fibromyalgia is directly contradicted by evidence from Johnson's treating physician and the objective medical evidence of Dr. Stayton that corroborates Dr. Paulus's findings. Because Dr. Paulus's medical opinion is supported by the aforementioned evidence, which itself is "well-supported by medically acceptable clinical and laboratory diagnostic techniques. . . [Dr. Paulus's] opinion should be given controlling weight." *Krogmeier*, 294 F.3d at 1023.  The ALJ's failure to do so constitutes reversible error.

The ALJ also disregarded Dr. Paulus's medical finding that Johnson did not have fibromyalgia because the ALJ "concurs with the state agency physicians who concluded that there was no verification of trigger points that are typically consistent with fibromyalgia syndrome" (Tr. 25).  Such a conclusion, however, constitutes reversible error.  "'As a

15

general matter, the report of a consulting physician who examined a claimant once does not constitute substantial evidence upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician.'"[3] *Wagner v. Astrue*, 499 F.3d 842, 850 (8th Cir. 2007) (internal quotations omitted).  Thus, the ALJ erred when she dismissed Dr. Paulus's medical assessment of Johnson's fibromyalgia and instead adopted the opinion of the consultative physician Dr. Wang on February 28, 2004, concluding that Johnson did not have "specific trigger points" and, therefore, did not have fibromyalgia (*See* Tr. 340).

The Court further notes that as a result of this error, the ALJ's findings based on the VE's response to the ALJ's hypothetical also constitute reversible error.  Any hypothetical posed to the VE in the present case must include Dr. Paulus's medical assessment of Johnson's fibromyalgia. *See Swope v. Barnhart*, 436 F.3d 1023, 1025 (8th Cir. 2006)("In fashioning an appropriate hypothetical question for a vocational expert, the ALJ is required to include all the claimant's impairments supported by substantial evidence in the record as a whole.").  Because the VE's current response to the ALJ's hypothetical (Tr. 707) fails

---

[3] The Court notes that the *Wagner* Court found two exceptions to this rule: "We have upheld an ALJ's decision to discount or even disregard the opinion of a treating physician (1) where other medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007).  In the present case, however, the objective medical evaluations in the record support Dr. Wirth's medical opinions, and there is no evidence of inconsistencies in the record that would undermine his credibility.  Accordingly, the medical opinions of consultative state agency doctors are not entitled to more weight that the medical opinions of Johnson's treating physician.

to take into account all of Johnson's limitations, the VE's current conclusion that Johnson can perform her past jobs is not supported by the substantial evidence in the record[4].

For the aforementioned reasons, the Court finds that the substantial evidence in the record demonstrates that the medical opinions of Johnson's treating physician are entitled to substantial weight. Consequently, the Court concludes that the ALJ's decision to disregard the medical opinions of Dr. Paulus constitutes reversible error. The Court reverses and remands the final decision of the Commissioner for further proceedings in accordance with this memorandum and order.

### 2.      The ALJ's Credibility Determination

Johnson also contends that the ALJ erred when she determined that Johnson's subjective statements regarding fibromyalgia were not credible. The Court has reviewed the final decision and finds that substantial evidence in the record does not support the ALJ's determination that Johnson's testimony is "only partially credible." (Tr. 28). As a result, the Court remands the final decision of the ALJ for further proceedings in accordance with this memorandum and order.

In making an RFC determination, the ALJ is required to consider the "claimant's own descriptions of his limitations." *Pearsall*, 274 F.3d at 1217-1218. Such consideration is required unless the ALJ makes a proper credibility determination and finds that a plaintiff's

---

[4] Johnson also argues that the ALJ committed reversible error when she failed to comply with the requirements set forth in SSR 82-61 and SSR 82-62 regarding identification of Johnson's past work's requirements and comparison to the claimant's RFC. Given the reasons stated within, this Court finds Johnson's argument in this regard to be moot, as the Court concludes that the claimant's RFC was incomplete because it did not take into account Dr. Paulus's assessment of Johnson or her subjective complaints.

statements regarding her own pain are not credible.  In the Eighth Circuit, *Polaski v. Heckler* stands as the guide for all credibility determinations:

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1986).

Consequently, an ALJ is required to make an "express credibility determination" when discrediting a social security claimant's subjective complaints. *Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000).  The ALJ, however, is "not required to discuss methodically each *Polaski* consideration."  *Id.* at 972.  Deference is generally granted to an ALJ's determination regarding the credibility of a claimant's testimony.  *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001) (stating that if an ALJ provides a "good reason"

for discrediting claimant's credibility, deference is given to the ALJ's opinion, "even if every factor is not discussed in depth.").

Federal regulations provide that an ALJ must consider all symptoms, "including pain, and the extent to which symptoms can reasonably be accepted as consistent with the objective medical evidence," defined as "medical signs and laboratory findings." 20 C.F.R. § 416.929. Medical "signs" include: anatomical, physiological, or psychological abnormalities which can be observed." 20 C.F.R. § 416.928(b). "Laboratory findings" are "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 416.928(c). Federal regulations also provide that an ALJ must "not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work *solely* because the available evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2) (emphasis added). Social Security Ruling 96-7p provides that a "strong indication" of the credibility of a claimant's statements is the consistency of the claimant's various statements and the consistency between the statements and the other evidence in the record[5].

_____

[5] Ruling 96-7p provides that the ALJ must consider such factors as:
    * The degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.
    * The consistency of the individual's own statements. The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record. Especially important are statements made to treating or examining medical sources and to the "other sources" defined in 20 CFR 404.1513(e) and 416.913(e). However, the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms

The ALJ's reason for discrediting Johnson's subjective statements is that "while the claimant currently is seriously limited based on the objective record at the present time, not all of the claimant's allegations are supported by the objective record as being sufficiently serious as to preclude all work prior to November 1, 2005." (Tr. 26).  Upon review of the record, the Court finds that the ALJ did not give "good reason" for discrediting the claimant's credibility[6].

The ALJ's credibility analysis rests entirely on her determination that there was a lack of objective medical tests evidencing Johnson's complaints of pain to the degree asserted.  This basis alone is insufficient.  *See Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002)("An ALJ may not disregard a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence").  It has also been

_____

may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects.
        * The consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work. This includes any observations recorded by SSA employees in interviews and observations recorded by the adjudicator in administrative proceedings.
SSR 96-7p, 1996 WL 374186 (S.S.A.) at 5 (July 2, 1996).


[6]The Court also remands the final decision of the ALJ for consideration of the claimant's subjective statements regarding carpal tunnel.  The ALJ acknowledged Johnson's claim of carpal tunnel, but dismissed it because "not all of the claimant's allegations are supported by the objective record" (Tr. 26).  As stated above,""An ALJ may not disregard a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence." *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002).  The ALJ must give "good reason" for discrediting a claimant's credibility, *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001).

20

determined that "although evidence of pain and suffering by a disability claimant may be of necessity subjective in nature, and therefore difficult to evaluate, administrative fact finder must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on claimant." *Northcutt v. Califoano*, 581 F.2d 164 (8th Cir. 1978).  In this case, however, the objective medical evidence from her treating physician is consistent with and supports her subjective statements regarding her own medical condition.

Johnson has consistently complained of the same pain to her treating physician, Dr. Paulus, and other physicians during the alleged disability period.  Johnson has complained of fatigue, poor stamina, chronic back and neck pain, and brain fog from as early as August 10, 2001, to November 20, 2006 (Tr. 274, 335, 332, 338, 344, 334, 236).  Johnson also testified to the same symptoms and the disabling effects they had on her (Tr. 690-91, 695, 700-03).  Dr. Paulus repeatedly assessed Johnson with  fibromyalgia, chronic fatigue, degenerative joint disease, and chronic neck and back pain (Tr. 335-36, 333, 573, 527).  Dr. Stayton also assessed Johnson with fibromyalgia on two separate occasions (Tr. 274, 271).

Accordingly, the Court finds that the stated basis for the ALJ's credibility determination is not valid and constitutes reversible error.  Johnson's testimony should be considered credible, given the consistency in her statements, the testimony regarding her symptomology, and the objective medical evidence that supports her subjective claims of pain.  The Court reverses and remands the final decision of the Commissioner for further proceedings in accordance with this memorandum and order.

**CONCLUSION**

For the aforementioned reasons, the Court reverses the final decision of the Commissioner and remands for further proceedings consistent with this memorandum and order.

ACCORDINGLY,

IT IS ORDERED:

1.     This matter is remanded to the Defendant, Commissioner of the Social Security Administration, pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order; and

2.     A separate Judgment will be filed.

DATED this 29th day of July, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

22